UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


JOHNNY L. GRAHAM                                          PLAINTIFF


VS.                                   CIVIL ACTION NO. 4:08CV26TSL-LRA


APPLIED GEO TECHNOLOGIES, INC.
D/B/A CHAHTA ENTERPRISE,
ALLEN HINES, TIM NELSON, MICHAEL
MILLER, AND SANDRA BOOKER, IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITIES AS
PRESIDENT, DIRECTOR OF ADMINISTRATION,
VICE PRESIDENT OF OPERATIONS, AND SENIOR
QUALITY MANAGER, RESPECTIVELY                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants Applied Geo Technologies, Inc. (AGT), Allen Hines, Tim Nelson, Michael Miller and Sandra Booker to dismiss plaintiff's complaint for failure to exhaust tribal remedies in the courts of the Mississippi Band of Choctaw Indians. Plaintiff Johnny L. Graham has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted.

Defendant AGT was established by the Mississippi Band of Choctaw Indians as a for-profit "tribal entity" for the purpose of competing for federal contracts as a prime contractor. Plaintiff Johnny Graham, an African-American employee of AGT, filed this lawsuit in this court against AGT and four of its managers for alleged race discrimination and retaliation in violation of Title

VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.[1]  Defendants have moved to dismiss or stay plaintiff's suit based on the tribal exhaustion doctrine.

In National Farmers Union Insurance Cos. v. Crow Tribe of Indians, 471 U.S. 845, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985), the case in which the Supreme Court established the tribal exhaustion doctrine, the Court held that the extent of tribal sovereignty is a matter of federal law for the purposes of 28 U.S.C. § 1331 and therefore, federal courts have subject matter jurisdiction under § 1331 to determine whether a tribal court has exceeded its lawful jurisdiction.  But the Court also held that as a matter of comity, before a party may challenge the tribal court's jurisdiction in federal court, he must first exhaust his remedies in the tribal court.  Id. at 855-57, 105 S. Ct. at 2453-54.  The Court explained its reasoning and the policy considerations supporting its decision as follows:

> [T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch

---

[1] Plaintiff alleges that he became employed by AGT in 1995, and in 2005 became its Quality Manager; that in September 2007, AGT hired a less qualified Caucasian female from outside the company as its Senior Quality Manager without giving him notice of the position or the opportunity to apply; that after he notified AGT of its discrimination and filed an EEOC charge complaining of discrimination, he suffered countless retaliatory adverse personnel actions.

2

> policy as embodied in treaties and elsewhere, and administrative or judicial decisions.
>
> We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge. Moreover the orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed. The risks of ... [a] "procedural nightmare" ... will be minimized if the federal court stays its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction and to rectify any errors it may have made.

Id. at 856-57, 105 S. Ct. at 2454.

The Supreme Court reaffirmed the tribal exhaustion doctrine in Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987). There, the Court extended the doctrine to diversity cases, and in doing so, reiterated the bases for the doctrine, observing that "Indian tribes retain 'attributes of sovereignty over both their members and their territory' to the extent that sovereignty has not been withdrawn by federal statute or treaty," id., at 14, 107 S. Ct. at 975 (quoting United States v. Mazurie, 419 U.S. 544, 557, 95 S. Ct. 710, 42 L. Ed. 2d 706 (1975)), that "[t]ribal courts play a vital role in tribal self-government, and the Federal Government has consistently encouraged their development," id. at 14, 107 S. Ct. at 975, and that "unconditional access to the federal forum would place it in

3

direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs." Id. at 15, 107 S. Ct. at 976. Thus, the Court held, "the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the Tribal Court a 'full opportunity to determine its own jurisdiction.'" Id. at 16, 107 S. Ct. at 976 (quoting National Farmers at 857, 105 S. Ct. at 2454).

In sum, "while the federal courts ultimately have jurisdiction to determine the limits of a tribal court's jurisdiction, the tribal exhaustion rule holds that tribal courts, which 'play a vital role in tribal self-government,' must be permitted the first opportunity to resolve challenges to their jurisdiction without federal court interference." Williams-Willis v. Carmel Financial Corp., 139 F. Supp. 2d 773, 777 (S.D. Miss. 2001) (citing Iowa Mutual, 480 U.S. at 14, 107 S. Ct. at 976, and Strate v. A-1 Contractors, 520 U.S. 438, 451, 117 S. Ct. 1404, 1411, 137 L. Ed. 2d 661 (1997)). See also Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe, 117 F.3d 61, 65 (2d Cir. 1997) (under doctrine of exhaustion of tribal remedies, "parties who challenge, under federal law, the jurisdiction of a tribal court to entertain a cause of action must first present their claim to the tribal court before seeking to defeat tribal jurisdiction in any collateral or parallel federal court proceeding"). Moreover, while the tribal exhaustion rule is "prudential rather than

4

jurisdictional, '[e]xhaustion is mandatory ... when a case fits within the policy.'" Malaterre v. Amerind Risk Mgmt., 373 F. Supp. 2d 980, 983 (D.N.D. 2005) (citing Gaming World Int'l, Ltd. v. White Earth Band of Chippewa, 317 F.3d 840, 849 (8th Cir. 2003)).[2]

"[W]hen a colorable claim of tribal court jurisdiction has been asserted, a federal court may (and ordinarily should) give the tribal court precedence and afford it a full and fair opportunity to determine the extent of its own jurisdiction over a particular claim or set of claims." Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth., 207 F.3d 21, 31 (1st Cir. 2000). The issue here, then, is whether a colorable claim of tribal court jurisdiction has been asserted.

"The tribal exhaustion doctrine is not ... applicable to every case to which a tribe or a tribe member is a party." Bank One, N.A. v. Lewis, 144 F. Supp. 2d 640, 643-644 (S.D. Miss. 2001), aff'd sub nom., Bank One v. Shumake, 281 F.3d 507 (5th Cir. 2002); see also Ninigret Dev. Corp. v. Narragansett Indian

---

[2] In National Farmers, the Supreme Court identified three situations in which the tribal exhaustion rule would not require litigants to first present their jurisdictional arguments in tribal court: "[1] where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or [2] where the action is patently violative of express jurisdictional prohibitions, or [3] where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." National Farmers, 471 U.S. at 856 n.21, 105 S. Ct. at 2454 n.21 (citation and internal quotations omitted). None of those circumstances is present in this case.

5

Wetuomuck Housing Auth., 207 F.3d 21, 31 (1st Cir. 2000) ("[T]he tribal exhaustion doctrine does not apply mechanistically to every claim brought by or against an Indian tribe."). In Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981), the Supreme Court set forth the "general proposition" that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." 450 U.S. at 565, 101 S. Ct. 1245 (emphasis added). The Court recognized two exceptions to this "main rule," as follows: Tribes may exercise civil jurisdiction over nonmembers when (1) nonmembers "enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements"; or (2) nonmembers engage in conduct on fee lands within a tribal reservation that "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Id. at 565-66, 101 S. Ct. 1245. Thus, while a tribal court generally does not have jurisdiction over nonmember parties, there is an exception in that the tribe may regulate activities of nonmembers who enter consensual relationships with the tribe or its members through commercial dealing, contracts, leases, or other arrangements. TTEA v. Ysleta del Sur Pueblo, 181 F.3d 676 (5th Cir. 1999) (citing Montana).

"Civil disputes arising out of the activities of non-Indians on reservation lands almost always require exhaustion if they

6

involve the tribe." Ninigret Dev. Corp., 207 F.3d at 32. See Williams v. Lee, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959) (stating that the Court has "consistently guarded the authority of Indian governments over their reservations...."); Smith v. Salish Kootenai College, 434 F.3d 1127 (9th Cir. 2006) (en banc) (explaining that tribal courts may exercise jurisdiction where nonmembers are the plaintiffs and the claims arise out of commercial activities within the reservation); Elliott v. White Mountain Apache Tribal Court, No. CIV 05-4240-PCT-MHM, 2006 WL 3533147, 3 (D. Ariz. Dec. 6, 2006) (noting that in determining tribal jurisdiction, courts look first to the party status of the nonmember, i.e., whether the nonmember is a plaintiff or defendant in tribal court, and second, "perhaps to a lesser extent, whether the events giving rise to the cause of action occurred within the reservation).

Indeed, plaintiff does not dispute that a claim against a tribal defendant on a cause of action arising on reservation lands in connection with a consensual relationship entered with the tribe, including an employment relationship, is subject to the rule of tribal exhaustion. However, he denies that his claim falls within this category. While plaintiff acknowledges he entered into a consensual relationship with AGT, namely, a consensual employment relationship, he declares that Montana's consensual relationship exception is inapplicable because he

7

entered into a consensual relationship *with AGT* and did not enter into a consensual relationship with the Tribe itself. Graham points out that he was not employed by the Mississippi Band of Choctaw Indians ("the Tribe"), but rather by AGT. And he contends that while AGT is owned by the Tribe and is located on the reservation, it is nevertheless a separate entity from the Tribe. He concludes, therefore, that the tribal exhaustion doctrine does not apply.

Plaintiff's position is grounded on his characterization of AGT as a non-Indian entity. If that were, in fact, an indisputably accurate characterization, then plaintiff would be correct in his assertion that the tribal exhaustion doctrine is inapplicable. See Tidwell v. Harrah's Kansas Casino Corp., 322 F. Supp. 2d 1200, 1206 (D. Kan. 2004) (holding that tribal exhaustion doctrine did not apply to non-Indian employee's Title VII suit against employer, non-Indian entity located on the reservation); Vance v. Boyd Miss., Inc., 923 F. Supp. 905 (S.D. Miss. 1996) (holding that tribal exhaustion doctrine did not apply in Title VII action filed by non-Indian against non-Indian employer located on the reservation). It appears to the court, however, that AGT is properly considered, at least arguably, a tribal entity, and that consequently, the case presents a colorable claim of tribal court jurisdiction so that the requirement of exhaustion applies.

It is undisputed that plaintiff was not directly employed by the Tribe, and that his employer was instead AGT. However, as recognized in a number of cases, the requirement of tribal exhaustion applies to claims against tribal entities, including tribally-chartered, wholly tribally-owned corporations, to the same extent as suits to which Indian tribes or their members are parties. In this vein, while "not every enterprise that is owned or staffed by members of a tribe may be considered a tribal entity for purposes of tribal jurisdiction, there are entities that are sufficiently identified with the tribe that they may be considered to be 'tribal.'" Smith, 434 F.3d at 1133 (holding that a wholly-owned governmental subdivision of the Tribe enjoyed the Tribe's sovereign immunity) (citations omitted). For example, "courts have extended tribal sovereign immunity to tribal agencies, tribal housing authorities, and 'subordinate economic organizations.'" Id. (citations omitted). See also Barker v. Menominee Nation Casino, 897 F. Supp. 389 (E.D. Wis. 1995) (stating that "an action against a tribal enterprise is, in essence, an action against the tribe itself," and applying tribal sovereign immunity to casino corporation whose charter was issued through tribal ordinance and pursuant to tribal constitution); Local IV-302 Int'l Midworkers Union of Am. v. Menominee Tribal Enters., 595 F. Supp. 859, 862 (E.D. Wis. 1984) (applying tribal sovereign immunity to entity created by the tribal constitution);

9

See also Altheimer & Gray v. Sioux Mfg. Corp., 983 F.2d 803 (7th Cir. 1993) (recognizing unity of tribe and its wholly-owned tribal corporation that was organized by the tribe under the tribe's Law and Order Code and whose offices and facility were located inside the boundaries of the reservation on land leased from the tribe, and concluding that contract with the corporation was in effect a contract with the tribe itself); cf. Myrick v. Devils' Lake Sioux Mfg. Corp., 718 F.Supp. 753 (D.N.D. 1989) (state-chartered corporation partially owned by Indian tribe was not a tribal entity).

In the case at bar, the record evidence reflects that AGT was established by tribal charter as a for-profit "tribal entity" for the purpose of competing for federal contracts as a prime contractor. AGT is wholly owned by the Mississippi Band of Choctaw Indians and is subject to regulation by the Tribal Council. The members of AGT's board of directors are appointed by the Tribal Council and serve at the pleasure of the Council; those members may be removed by the Tribal Council without cause at any time. AGT's office is located on the reservation, on property owned by the Tribe and leased to AGT by the Tribe. It is the court's understanding that in purpose and effect, AGT is operated as a means of entering federal contracts on behalf of and for the benefit of the Tribe.

In the court's opinion, defendants have clearly made a colorable showing that Graham entered a consensual relationship with the Tribe (or a tribal entity that may fairly be treated for tribal jurisdiction purposes as the Tribe), and the activities on which plaintiff's complaint is based occurred on the reservation and arose out of that consensual relationship. Under the circumstances, the court concludes that exhaustion of tribal remedies is required.

In so concluding, the court acknowledges plaintiff's argument that the tribal exhaustion rule does not apply in this case because the Choctaw Tribal Council has waived AGT's sovereign immunity as to the Title VII and 42 U.S.C. § 1981 claims pled in this action. In this regard, plaintiff points out that Ordinance 59-A, pursuant to which AGT was established, provides:

> Applied Geo Technologies, Inc., as a corporate entity, can sue and be sued in its corporate name in courts of competent jurisdiction *for all matters relating to Small Business Administration Programs engaged in by the Corporation*, including but not limited to the U.S. District Courts, Southern District of Mississippi. (emphasis added).

According to plaintiff, this waiver of tribal immunity that AGT might otherwise have had so that the Tribe might preserve its own immunity effectively separates AGT from the Tribe. "[T]he authorities are in some disarray" over the question "whether the federal court or the tribal court should pass upon [a] sovereign immunity defense, at least initially." Ninigret, 207 F.3d at

11

28-29. Compare, e.g., McArthur v. San Juan County, 309 F.3d 1216, 1227 (10th Cir. 2002) (reversing district court's dismissal of claims arising within Indian Reservation boundaries on jurisdictional (sovereign immunity) grounds because district court should first have required exhaustion of tribal remedies to give tribal court first chance to rule on sovereign immunity defense), and Davis v. Mille Lacs Band of Chippewa Indians, 193 F.3d 990, 992 (8th Cir. 1999) (same), with Ninigret, 309 F.3d at 1227 (holding that "as long as federal subject-matter jurisdiction exists, a defense predicated on tribal sovereign immunity is susceptible to direct adjudication in the federal courts, without reference to the tribal exhaustion doctrine"), and Altheimer & Gray, 983 F.2d at 812-15 (same). However, the court here may assume for the sake of argument that it could properly pass on the issue of sovereign immunity first without violating the tribal exhaustion rule, because it is clear to this court that the waiver of immunity in AGT's Amended Charter does not apply to the claims herein. The waiver created by the charter is expressly limited to claims "relating to Small Business Administration programs" engaged in by AGT. Plaintiff's claims in this case do not relate to AGT's SBA programs within the meaning of the waiver.

Plaintiff also opposes application of the tribal exhaustion doctrine on the basis that "there is no pending tribal litigation and tribal jurisdiction has not been challenged." The court

12

rejects his position.  By far, the majority of courts considering the issue have held that the necessity of tribal exhaustion does not turn on whether a case is pending in Tribal Court.  See, e.g., Ninigret, 207 F.3d at 31 ("Where applicable, this prudential doctrine has force whether or not an action actually is pending in a tribal court."); United States v. Tsosie, 92 F.3d 1037, 1041 (10th Cir. 1996) (same); Duncan Energy Co. v. Three Affiliated Tribes, 27 F.3d 1294, 1299-1301 (8th Cir. 1994), cert. denied, 513 U.S. 1103, 115 S. Ct. 779, 130 L. Ed. 2d 673 (1995); Burlington Northern R.R. v. Crow Tribal Council, 940 F.2d 1239, 1246 (9th Cir. 1991).  These courts all hold that if a suit is arguably within the jurisdiction of the Tribal Court, it must first be filed in Tribal Court.

Plaintiff further argues that application of the Colorado River factors weighs against dismissing his claims.  However, the Colorado River abstention doctrine has no applicability to the present inquiry.  See Bank One, N.A. v. Lewis, 144 F. Supp. 2d 640, 649-650 (S.D. Miss. 2001) (rejecting Colorado River analysis in context of motion based on tribal exhaustion, and observing that "in contrast to Colorado River, under which abstention is the exception rather than the rule, deference to tribal courts pursuant to the tribal exhaustion doctrine is the rule rather than the exception").

Based on the foregoing, it is ordered that defendants' motion to dismiss is granted.

SO ORDERED this 19th day of December, 2008.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE